## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZACHERY DAVEY, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>DEVIN BLOOD, *et al.*,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER ON STATE OF UTAH'S MOTION TO DISMISS**<br><br>Case No.  2:23-cv-442-AMA<br><br>Hon. Ann Marie McIff Allen |

The Plaintiffs—the son, daughters, and the Estate of Ted Claude Davey—filed this action against the warden, the deputy warden, and other named correctional officers at the Central Utah Correctional Facility in Gunnison (the "Individual Defendants"), and the State of Utah (the "State").  In their Amended Complaint Plaintiffs assert three claims:  two based on the United States Constitution and brought under 42 U.S.C.§ 1983 (*see* Am. Compl., ECF No. 35, at ¶¶52–77 & ¶¶92–96), and one under Article I, Section 9 of the Utah Constitution. (*Id.* at ¶¶78–91.)  Only this latter claim has been asserted against the State of Utah.

Relying on the doctrine of sovereign immunity the State of Utah has moved for dismissal of the sole count asserted against it under Fed. R. Civ. 12(b)(6).  (*See* ECF No. 43.)  Plaintiffs oppose the State's motion, arguing that sovereign immunity is unavailable because their claim asserts the State's violation of Utah's

Constitution.  Because the Supreme Court of Utah has determined that sovereign immunity for such claims remains the law, the State's motion GRANTED.[1]

## BACKGROUND

The allegations in the Amended Complaint present a disturbing series of events.[2]  In September 2019, the Plaintiffs' father, Ted Claude Davey ("Davey'), was convicted in Utah state court for driving under the influence and sentenced to no more than five-years imprisonment.  (*See* Am. Compl., ECF No. 35, at ¶21.)  Davey, a 62-year-old non-violent offender, was imprisoned at Central Utah Correctional Facility in Gunnison ("Gunnison"), where for most of the time he was housed in a dormitory-style unit with other nonviolent offenders and where he participated in rehabilitative programs.  (*Id*. at ¶24.)

In early 2022 Davey was transported to the University of Utah Hospital for treatment for his chronic back pain.  (*Id*. at ¶26.)  Following this treatment, Davey was held for several weeks at the Utah Correctional Facility in Salt Lake City before he was transported back to Gunnison.  While Davey was away from his prison cell in Gunnison, his cell was ransacked and most of his belongings stolen.  (*Id*. at ¶27.)  A few months later Davey was again experiencing back pain.  Told he

---

[1]    Pursuant to Local Rule DUCivR 7-1(g), the court finds oral argument unnecessary and decides the motion based on the parties' written briefing.

[2]    All background facts are drawn from the Amended Complaint filed April 23, 2024. (*See* Am. Compl., ECF No. 35.)

could be transported to the University of Utah Hospital for treatment, Davey refused because he feared his cell would be ransacked again and the treatment would be unhelpful.  (*See id*. at ¶¶28–30.)

The Amended Complaint alleges that in retaliation for Davey's refusal, the Individual Defendants[3] decided to move Davey from the nonviolent unit at Gunnison and his rehabilitative programs to the "Birch" unit at Gunnison.  The Birch unit is a general population unit that houses the prison's violent offenders.  Davey was assigned a cellmate, Cleo Kyle Cheney, who was a violent offender serving a prison term for robbery and aggravated robbery, among other things.  (*Id*. at ¶33.)

Soon thereafter Davey was assaulted multiple times by several prisoners, including his cellmate Cheney.  Davey informed the Individual Defendants about these assaults, but they failed to investigate or address Davey's claims.  Davey feared that Cheney was going to kill him, and he complained repeatedly to some of the Individual Defendants about Cheney.  Davey also requested to be moved to a different cell or to have Cheney removed from Davey's cell.  (*Id*. at ¶¶ 33–39.) Neither Davey nor Cheney were moved.

Davey also expressed his fears to his family—the Plaintiffs in this action— and they too contacted the Individual Defendants and expressed their fears for

---

[3]    These persons include Devin Blood, the then warden at Gunnison; Bart Mortenson, the then deputy warden; Lieutenant D. Johnson; Sargent Robert Branham; Captain Allen, corrections officer Troyal George; and corrections officer Dylan Noyes.  (*See* ECF No. 35 at ¶¶7–13.)

Davey's safety and requested that Davey be moved to a different cell.  The Individual Defendants did nothing to investigate Davey's claims and they did not move him.  (*Id.* at ¶¶34–42.)  On August 28, 2022—just eight days before Davey was to be released from prison for his conviction for driving under the influence— Cheney strangled Davey in his cell and killed him.  (*Id.* at 2 & ¶46.)  Although Cheney called for medical attention after he strangled Davey, and other inmates in the unit called for guards and medical personnel to help Davey, the medical teams delayed an unreasonably long time before arriving.  Cheney eventually pleaded guilty to manslaughter for recklessly causing the death of Davey.  (*Id.* at ¶¶46–51.)

In their Amended Complaint Plaintiffs claim that the State of Utah, along with the Individual Defendants, flagrantly violated Davey's rights under the Unnecessary Rigor Clause of Article I, Section 9 of the Utah Constitution.[4]  (*See id.* at ¶¶78–91.)  Plaintiffs seek money damages and attorneys' fees as against the State of Utah.  They do not seek any injunctive or other equitable relief.  (*See id.* at 21–22.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal if the plaintiff's complaint fails to "state a claim upon which relief can be granted."

---

[4]    Article I, Section 9 reads: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

In construing a plaintiff's complaint, the court will assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff.  *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted above, the State has moved for dismissal under Fed. R. Civ. P. 12(b)(6).  By raising sovereign immunity as its sole challenge to the Amended Complaint,[5] it appears that another and perhaps a more appropriate basis for dismissal arises under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.  *See Normandy Apartments, Ltd. v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) (stating that "[t]he defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where

---

[5]       The State of Utah has not raised any Eleventh Amendment argument even though it has long been recognized that the Eleventh Amendment does not provide for federal jurisdiction over suits by citizens against nonconsenting States.  *See, e.g., Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'") (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).  Had the State of Utah done so, this court would have been obligated to address that issue.  *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 & n.8 (10th Cir. 2008) (noting that if the "State defendant had directly asserted Eleventh Amendment immunity "addressing the threshold jurisdictional matter would be obligatory").  But where, as here, the Eleventh Amendment immunity issue was not raised, the court need not address it.  *See id.* at 942 (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (noting that "[u]nless the State raises the matter, a court can ignore it")).

applicable").  Therefore, the court will also consider the sovereign immunity

argument under Rule 12(b)(1).  *See, e.g., Ruiz v. McDonnell*, 299 F.3d 1173, 1180–82

(10th Cir. 2002) (analyzing whether defendant was entitled to sovereign immunity

under Rule 12(b)(1)); *Davis v. California*, No. 17-2125, 2017 WL 4758928, at *1 (D.

Kan. Oct. 20, 2017) (construing defendant's Rule 12(b)(6) motion to dismiss based

on sovereign immunity as an argument for dismissal under Rule 12(b)(1)), *aff'd*, 734

F. App'x 560 (10th Cir. 2018).

Under Rule 12(b)(1) the party invoking federal jurisdiction bears the burden

of proof.  *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).  In

the context here—where sovereign immunity is raised—this means that Plaintiffs

must show that the State of Utah has waived its sovereign immunity for their

claim.  Plaintiffs' failure to do so will result in the dismissal of their claim without

prejudice for lack of jurisdiction.

Regardless of which Federal Rule of Procedure is applied, because Plaintiffs

have not pleaded yet alone established that the State of Utah has waived its

sovereign immunity as to Plaintiffs' claim, their constitutional claim against the

State of Utah must be dismissed.


ANALYSIS

Under the historic English common law maxim "*Rex non potest peccare*,"

loosely translated as "the King can do no wrong," a sovereign was immune from

liability.  *See* 1 William Blackstone, Commentaries on the Laws of England at *235,

*238 (1765) (noting that no "action can be brought against the king, even, in civil matters, because no court can have jurisdiction over him" and that "it is at the same time a maxim in those laws that the king himself can do no wrong");[6] 3 Blackstone, Commentaries at *254 ("That the king can do no wrong, is a necessary and fundamental principle of the English constitution.").[7]

There were two distinct aspects to this doctrine of sovereign immunity:  a) that the King, as the font of law, is not bound by the law's provisions; and b) that the King, as the font of justice, is not subject to suit in its own courts.  *See* Louis L. Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 HARV. L. REV. 1, 3–4 (1963); *see also* 57 Am.Jur.2d Municipal, County, School and State Tort Liability § 10 (2001) ("Sovereign immunity presents a complete bar to suits against the state and it embraces two distinct principles: immunity from liability and immunity from suit.").

As noted by the late Judge Bruce Jenkins of this court, "the common-law doctrines of sovereign immunity and local governmental immunity found their way into American jurisprudence."  *MacArthur v. San Juan County*, 405 F. Supp. 2d 1302, 1317 (D. Utah 2005).  They "were recognized by the individual states of the United States from the outset" and that "nearly every state adopted the doctrine of immunity of the state for the torts of its officers."  *See id*. (cleaned up).  And

---

[6]        Available at https://avalon.law.yale.edu/subject_menus/blackstone.asp#book1

[7]        Available at https://avalon.law.yale.edu/18th_century/blackstone_bk3ch17.asp

although "statutes came to affect its importance in the succeeding centuries, the doctrine was never reduced to codification, and Americans took their understanding of immunity doctrine from Blackstone" and it remained a common-law rule. *Id.*; *see also Employees of Dept. of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri*, 411 U.S. 279, 288 (1973) (Marshall, J., concurring in result) ("Sovereign immunity is a common-law doctrine that long predates our Constitution and the Eleventh Amendment, although it has, of course, been carried forward in our jurisprudence.").

And as noted by Judge Jenkins, the Supreme Court of Utah has observed that "sovereign immunity was a settled feature of the common law when Utah became a state [on January 4, 1896] and adopted its constitution." *See MacArthur*, 405 F. Supp. 2d at 1318 (cleaned up). Indeed, over a century ago the Supreme Court of Utah stated that "[i]n the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained. The doctrine is elementary and of universal application ...." *Wilkinson v. State*, 134 P. 626, 630 (Utah 1913). Over the years, Utah's courts have uniformly adhered to this rule. *See, e.g., Campbell Bldg. Co. v. State Road Comm'n*, 70 P.2d 857, 861 (Utah 1937) ("[A]ction may not be maintained unless the state has, through legislative or constitutional action, given consent to be sued.") (citation omitted); *Tiede v. State*, 915 P.2d 500, 504 (Utah 1996) (recognizing that sovereign immunity—the principle that the state cannot be sued in its own courts without its consent—was a settled

feature of American common law at the time Utah became a state) (citing *Wilkinson* and other cases).

   As the Utah Supreme Court has more recently noted, when it comes to sovereign immunity, "[i]n the absence of applicable constitutional or statutory authority, Utah courts employ the common law." *See Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 20 & n.8, 16 P.3d 533, 537 & n.8 (Utah 2000) (*citing* Utah Code Ann. § 68-3-1 (1996) (providing that "[t]he common law of England so far as it was not repugnant to, or in conflict with, the constitution or laws of the United States, or the constitution or laws of this state … is hereby adopted and shall be the rule of decision in all courts of this state")).

   In 1965 the Utah State Legislature enacted what is known as the Utah Governmental Immunity Act, "which barred all causes of action against the state and its political subdivisions unless expressly authorized by statute." *Tindley v. Salt Lake City School Dist.*, 2005 UT 30, ¶ 9, 116 P.3d 295, 298 (Utah 2005)).  But there is nothing in the 1965 enactment or in any subsequent revisions that has abrogated the State of Utah's common law sovereign immunity from claims that the State is liable for violating provisions of the Utah Constitution.  Nor has any court so held.

   The closest that any court has come is the case of *Colman v. Utah State Land Board*, 795 P.2d 622 (Utah 1990).  In *Colman*, the Utah Supreme Court held that a Takings Clause claim under Article I, Section 22 of the Utah Constitution could proceed against the State.  *Id.* at 634–35.  Noting that this provision provides that

9

"[p]rivate property shall not be taken or damaged for public use without just compensation," the court observed that it had long ago determined that the State "cannot take or damage private property for public use without making just and adequate compensation …  This is the fundamental law of the commonwealth …[and] it is the duty of the courts to give it full force and effect whenever it is properly invoked … even against the sovereign power of the state."  *Id.* at 625, 631 (quoting *Croft v. Millard County Drainage Dist. No. 1*, 202 P. 539, 541 (Utah 1921)).  The court, further noting that "[t]he framers [of the Utah Constitution] certainly did not intend to allow state government to override the constitutional guarantee with a legislative enactment," and that the State's obligation to pay just compensation was "mandatory and obligatory," held that the State was not immune from a claim under the Takings Clause.  *See id.* at 630, 635.  The court also noted that the Takings Clause needed no legislation to activate it—*i.e.*, it was self-executing.[8]  *See id.* at 632–634.

A decade later in *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.*, 2000 UT 87, 16 P.3d 533 (Utah 2000), the Utah Supreme Court noted the limitations of *Colman.*  In an action concerning claims against a local

---

[8]    The Utah Supreme Court has determined that other constitutional provisions are self-executing, including Article I, Section 9—the Unnecessary Rigor Clause—that is at issue here.  *See, e.g., Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 9, 16 P.3d 533, 535 (2000) (noting that Article I, Section 22, Article I, Section 9, and Article XII, Section 18 were previously held to be self-executing and holding that Article I, Section 7 and Article X, Section 1 are self-executing); *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17 ¶¶62–63, 250 P.3d 465, 481–82 (Utah 2011) (holding that Article I, Section 1 and Article I, Section 14 are self-executing).

government agency asserting violations of the Due Process and Open Education Clauses of the Utah Constitution, the court observed that "[e]xcept for the Takings Clause, the Utah Constitution does not expressly provide damage remedies for constitutional violations.  Thus, aside from the Takings Clause, there is no textual constitutional right to damages for one who suffers a [state] constitutional tort."  *Id.* at ¶20, 16 P.3d at 538.

*Spackman* further observed that "there is no express statutory right to damages for one who suffers a constitutional tort" other than for a Takings Claim. *See id.* at ¶20 & n.7, 16 P.3d at 537 & n.7.  And because Utah still employs the common law, the court held that the ability for a person to recover damages against the State of Utah for a self-executing constitutional clause "rests on the common law."  *See id.* at ¶20, 16 P.3d 537–38.

Finding that the Due Process and Open Education Clauses were self-effecting (*see id.* at ¶18, 16 P.3d at 537), the *Spackman* court set out a three-part test for determining when, under the common-law, a plaintiff may proceed against a government agency and/or its employees with a suit for damages for a violation of a self-executing provision of Utah's Constitution.  *Id.* at ¶¶19–25, 16 P.3d at 537-39. That test required the plaintiff seeking money damages for a self-executing state constitutional violation to establish that:  (1) there was a "flagrant" violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief is wholly inadequate to protect the plaintiff's rights.  *Id.* at ¶¶22–25, 16 P.3d at 538–39.  Since *Spackman* the Utah Supreme Court has

11

continued to recognize *Spackman's* holding. *See Dexter v. Bosko*, 2008 UT 29 ¶22, 184 P.3d 592, 597–98 (Utah 2008); *Jensen ex. rel. Jensen v. Cunningham*, 2011 UT 17 ¶ 48, 250 P.3d 465, 478 (Utah 2011); *Kuchcinski v. Box Elder County*, 2019 UT 21 ¶¶16, 31, 450 P.3d 1056, 1062, 1067 (Utah 2019) (all acknowledging the *Spackman* tests for money damages for state constitutional violations by government employees and officials).

In *Kuchcinski v. Box Elder County*, the Utah Supreme Court held that the *Spackman* test also applies to state constitutional claims asserted against a local municipality, as well as against individual government employees. *See* 2019 UT 21 ¶¶24–29, 31, 450 P.3d at 1064–67. In doing so, the court modified the *Spackman* test somewhat, holding that the "flagrant" analysis when the plaintiff's suit is against a municipal entity, rather than an individual, is different. To constitute a flagrant violation in such an instance, the court held that the plaintiff must show "(1) the existence of a municipal policy or custom, (2) that this policy or custom 'evidences a "deliberate indifference"' to the plaintiff's constitutional rights, and (3) that this policy or custom was 'closely related to the ultimate injury.'" *Id.* at ¶32, 450 P.3d at 1067 (cleaned up).

In *Kuchcinski*, however, the question of sovereign immunity (or any other immunity) for the State of Utah was not at issue. The only government defendants were Box Elder County, a local municipal government, and the Box Elder County's Sheriff's Office, a local government agency: the State of Utah was not a defendant.

The federal court for the District of Utah, however, has addressed this issue in claims against the State of Utah. First, in *P.J. ex rel. Jensen v. State of Utah*, No. 2:05-cv-0739, 2006 WL 1702585, at *2 (D. Utah June 16, 2006),[9] the court concluded that common law sovereign immunity barred any state constitutional claims against the State of Utah. Relying on *Spackman*, the court dismissed the plaintiffs' claims noting that "except for one provision not applicable here [the Takings Clause], the Utah Constitution does not expressly provide damages remedies for constitutional violations."[10] *Id.* (cleaned up). The court further observed that "'a Utah court's ability to award damages for [a] violation of a self-executing constitutional provision rests on the common law.'" *Id.* (quoting *Spackman*, 16 P.3d at 538). Notably, the court also denied plaintiff's motion to certify the question of sovereign immunity to the Utah Supreme Court. *Id.* at *21. Although the claims asserted in *P.J.* concerned some self-executing provisions of Utah's Constitution, none of the claims concerned the Unnecessary Rigor Clause of Article I, Section 9.

More recently, in *Randall v. Utah*, No. 4:19-cv-038, 2021 WL 778616, at *3 (D. Utah Mar. 1, 2021), the federal district court addressed an unnecessary rigor claim asserted against the State of Utah. Although the court granted plaintiff leave

---

[9]     This action was a predecessor action for *Jensen ex. rel. Jensen v. Cunningham*, 2011 UT 17, 250 P.3d 465 (Utah 2011).

[10]    The court dismissed these claims despite acknowledging that three of the plaintiff's four state constitutional claims concerned provisions that were self-executing. *See id.* at *14 (acknowledging the Article I, Section 7 (due process) was held to be self-executing by the Utah Supreme Court, that defendants conceded that Article I, Section 14 (unreasonable searches and seizures) is self-executing, and holding that Article I, Section 1 (inalienable rights) is self-executing).

to amend some other claims, including his unnecessary rigor claims as against individual defendants, it barred plaintiff from re-asserting an unnecessary rigor claim against the State of Utah.  *Id.* at \*4  The court noted that "[t]he Eleventh Amendment prevents 'suits against a state unless it has waived its immunity or consented to suit."  *Id.* (citing cases).  It then noted that the plaintiff asserted "no basis for determining that the State has waived its immunity"  *Id.*  Accordingly, the court held that "[b]ecause any claims against the State appear to be precluded by Eleventh Amendment immunity, the Court believes it has no subject-matter jurisdiction to consider them."  *Id.* (citing at *Ray v. McGill*, No. CIV-06-0334, 2006 WL 2092561 at \*4 (W.D. Okla. July 26, 2006)).[11]

Distilled, these decisions confirm that, while actions for money damages against municipalities and individual state employees and officers for their violations of Utah's Constitution may sometimes be permissible, the State of Utah has not waived and still retains its sovereign immunity for almost all state constitutional violations.[12]  Except for the *Colman* case concerning the Takings Clause, none of the decisions cited herein have allowed state constitutional claims on any other provision, and specifically the Unnecessary Rigor Clause of Article I,

---

[11]    The *Randall* court did not, however, address any common law sovereign immunity issue.

[12]    Whether the doctrine of sovereign immunity should continue to shield the State of Utah from monetary damages based on the State's own violation of its constitution is a question for the Utah Supreme Court and/or the Utah Legislature.

14

Section 9, to go forward as against the State of Utah.[13]  Plaintiff has not presented

any authority supporting a contrary view.

     Although the Utah Supreme Court has not addressed this specific issue—*i.e.*,

whether sovereign immunity bars an unnecessary rigor claim against the State—

after review of these many decisions, this court concludes that were this question to

be raised,[14] that consistent with these decisions the Utah Supreme Court would

---

[13]     Although there are many decisions that have upheld or acknowledged the right to
bring an unnecessary rigor claim against a municipality or an individual government
employee, there are none that have allowed a claim against the State of Utah.  *See, e.g.,
Stella v. Davis County*, No. 1:18-cv-0002, 2023 WL 45334421, at *3–6 (D. Utah Aug. 18,
2023) (citing *Kuchcinski* the court acknowledged that a municipality, such as Davis County,
can be held liable for money damages on a state constitutional claim, confirmed the
propriety of a $3.65 million jury verdict against Davis County on an unnecessary rigor
claim, and denied Davis County's post-trial motions for a new trial and judgment as a
matter of law); *Christenson v. Salt Lake County*, 2022 UT App 51 ¶¶39–47, 510 P.3d 299,
306–10 (Utah 2022) (Pohlman, J.) (acknowledging availability of an unnecessary rigor
claim against Salt Lake County but affirming summary judgment dismissing the claim);
*McDonald v. Davis County*, No 1:20-cv-0136, 2021 WL 2940604, at *8–9 (D. Utah July 13,
2021) (citing *Spackman* and *Kuchcinski*, the court acknowledged that those rulings applied
to state constitutional claims asserted against municipal employees and a municipality);
*Finlinson v. Millard County*, 455 F. Supp. 3d 1232, 1247 (D. Utah 2020) (denying summary
judgment to Utah County on unnecessary rigor claim); *Asay v. Daggett County*, No. 2:18-cv-
0422, 2019 WL 181358, at *7 (D. Utah Jan. 11, 2019) (denying motion to dismiss plaintiff's
unnecessary rigor claim against caseworker for the Utah Department of Corrections noting
that plaintiff "has asserted a flagrant violation of his constitutional rights"); *Dexter v.
Bosko*, 2008 UT 29, ¶¶1, 3, 184 P.3d 592, 594 (2008) (examining validity of unnecessary
rigor claims against Utah State Prison guards and warden and agreeing with trial court
that the allegations, if true, established a constitutional violation); *Bott v. Deland*, 922 P.2d
732, 737–44 (Utah 1996) (concluding plaintiff was entitled to an award of money damages
on his unnecessary rigor claim as against the warden and other employees at the Utah
State Prison and holding that the statutory cap on damages did not apply), abrogated by
*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder County Sch. Dist.*, 2000 UT 87, 16
P.3d 533 (Utah 2000).

[14]     Where "the state's highest court has not decided the issue presented, [the court] may
either certify the question to that court or predict how it would rule." *Koch v. Koch Indus.,
Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000); *see also Finlinson v. Millard County*, 455 F.
Supp. 3d at 1240 (noting that if a federal court "'cannot ascertain the law of the forum

confirm that the common law doctrine of sovereign immunity bars Plaintiff's unnecessary rigor claim as against the State. *See P.J. ex rel. Jensen*, 2006 WL 1702585, at *2.

CONCLUSION

Accordingly, based on the foregoing,

IT IS ORDERED that Defendant the State of Utah's motion to dismiss (ECF No. 43) is GRANTED and the Plaintiffs claim against the State of Utah is DISMISSED WITHOUT PREJUDICE.

DATED this 7th day of August 2024.

BY THE COURT:

Hon. Ann Marie McIff Allen
United States District Judge

---

state, [it] must in essence sit as a state court and predict how the highest state court would rule.'") (quoting *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994)).