IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ZACHARY DAVEY, as an individual and heir, and as representative on behalf of the estate of TED CLAUDE DAVEY,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT BRANHAM, and DYLAN NOYES,<br><br>    Defendants. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00442-AMA-CMR<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

## BACKGROUND

This matter comes before the Court on Defendants' Motion for Summary Judgment[1] ("Motion"). The remaining claims for decision consist of a claim pursuant to 42 U.S.C. § 1983 for an alleged violation of the Eighth Amendment, and a claim under Article 1 Section 9 of the Utah Constitution, against Defendants Robert Branham and Dylan Noyes.[2] For the reasons explained below, the Court GRANTS summary judgment in favor of Defendants on the Eighth Amendment claim and declines to exercise supplemental jurisdiction over the Utah Constitution Article I, Section 9 claim, thereby dismissing this state claim without prejudice.

---

[1] ECF No. 65.
[2] Defendant Troyal George was previously dismissed by stipulation of the parties. *See* ECF No. 85.

**FACTS**

Decedent Ted Davey was an inmate at the Central Utah Correctional Facility ("CUCF"). On August 28, 2022, sometime between 3:53 am, when Defendant George performed a cell check,[3] and 4:12 am, Davey's cell mate, Kyle Cheney, strangled Davey in their shared cell.[4] Defendants became aware of the assault when Cheney called the control booth and reported to Defendant George his "celly isn't breathing" and that he and Davey "got in a fight and I choked him out."[5] Defendant George immediately alerted Defendants Branham and Noyes – the only other officers working in that housing unit.[6]

Branham and Noyes quickly dispatched to Cheney and Davey's cell.[7] Branham noticed Davey lying on the floor at the back of the cell, with a sheet covering his face.[8] Due to safety concerns, Branham and Noyes did not enter the cell when they first arrived on scene.[9] Branham immediately activated the Incident Management System ("IMS"), which dispatched a medical

---

[3] Ex. F, Video Footage at 3:53:30 AM; Ex. G, Control Log, AGO 000397; Ex. H, George Declaration, ¶ 7. All citations to lettered exhibits refer to the exhibits filed with the Motion.
[4] Ex. D, George Dep., 9:7-20; Ex. H, George Decl., ¶¶ 7, 10, 11; Ex. I, Incident Report, AGO00282. Ex. F, Video Footage at 3:53:30 AM, Ex. G, Control Log, AGO 000397.
[5] Ex. D, George Dep., 9:7-20; Ex. H, George Decl., ¶¶ 10, 11; Ex. I, Incident Report, AGO00282.
[6] Ex. A, Branham Dep., 45:21-46:3; Ex. B, Noyes Dep., 10:1-11:6; Ex. D, George Dep., 10:10-16; Ex. H, George Decl., ¶ 12.
[7] Ex. A, Branham Dep., 24:3-17; Ex. B, Noyes Dep., 10:1-11:3; 15:6-15; 33:22-34:4; Ex. D, George Dep., 9:11-14; Ex. F, Video at 4:14:29; Ex. I, Incident Report, AGO00280.
[8] Ex. A, Branham Dep., 25:11-21; Ex. I, Incident Report, AGO00280; Ex. K, Branham Decl., ¶ 8.
[9] Ex. B, Noyes Depo., 19:6-16; 29:18-30:3; 32:9-14; Ex, B, Noyes Dep., 14:3-10; 29:2-8; Ex. C, Mortensen Decl., ¶ 20; Ex. D, George Dep., 16:19-17:15; Ex. K, Branham Decl., ¶ 13. Officers Branham and Noyes also testified that their decision to wait was based on jail policy. While the parties disagree about whether that policy was written, that dispute is immaterial to resolution of Defendants' Motion.

team and additional officers from other sections of the prison.[10] Noyes assumed the role of Incident Commander.[11] George remained in the control room because at least one officer must remain in the control room at all times.[12] Cheney then told Branham he and Davey had "been arguing all day. He squared off on me. We got in a fight and I choked him out. He is not breathing."[13] Three minutes later, Cheney showed Branham blood on his finger and told Branham that Davey had blood on him too.[14]

The medical team reached Davey's cell eight minutes after Branham activated IMS and backup officers arrived less than a minute later.[15] When the backup officers arrived, Cheney was immediately removed from the cell.[16] The backup officers secured the cell and then removed Davey, placing him on the floor outside the cell.[17] A medical team began life saving measures on Davey.[18] Those measures continued as Davey was placed on a stretcher and taken to CUCF's medical facility.[19] Davey was pronounced dead 22 minutes later.[20] He died from manual strangulation.[21] The officer's actions, from the time they arrived at the cell until the time Davey was transported to medical, were captured on a prison security video.[22]

---

[10] Ex. A, Branham Dep., 27:2-25:24; Ex. B, Noyes Dep., 15:25; 19:23-20:4, Ex. C, Mortensen Decl., ¶ 28; Ex. F, Video at 4:14:52; Ex. H, George Decl., ¶ 15; Ex. K, Branham Decl., ¶ 10.
[11] Ex. A, Branham Dep., 27:11-17; Ex. B, Noyes Dep., 16:6-9; 31:17-19.
[12] Ex. C, Mortensen Decl., ¶ 15; Ex. H, George Decl., ¶ 9.
[13] Ex. A, Branham Dep., 26:14-22; Ex. D, George Dep., 9:7-14; 13:16-20; Ex. H, George Decl., ¶¶ 13, 14; Ex. I, Incident Report, AGO00280; Ex. K, Branham Decl., ¶ 11.
[14] Ex. I, Incident Report, AGO00280; Ex. K, Branham Decl., ¶ 16.
[15] Ex. F, Video at 4:22:49-4:28:17; Ex. G, Control Log, AGO000390; AGO000397.
[16] Ex. F, Video at 4:23:26–4:28:17.
[17] *Id*.
[18] *Id*.
[19] Ex. G, Control Log, AGO000390
[20] Ex. L, Death Certificate.
[21] *Id*.
[22] *See* Ex. F, Video Footage.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted to the moving party when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1152–53 (10th Cir. 2007) (citing former Fed. R. Civ. P. 56(c)). Once defendants have met that threshold, the burden then shifts to plaintiff to demonstrate a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to the motion, a plaintiff may not rely on the bare allegations from his complaint, but rather must "designate specific facts showing there is a genuine issue for trial." *Id*. (quotations omitted). If the non-movant fails to meet its burden as to one element of a claim, summary judgment is appropriate on that claim. *Id*. at 323.

## ANALYSIS

The undisputed material facts in this case demonstrate Defendants Branham and Noyes are entitled to qualified immunity.[23] "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show . . . (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Cruz v. City of Deming*, 138 F.4th 1257, 1266 (10th Cir. 2025). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). If the material facts are not disputed, the question of immunity is a legal one for the court to decide. *Gomes*, 451 F.3d at 1136.

---

[23] As indicated, Plaintiff conceded to dismiss Defendant George, therefore the Court does not analyze his conduct.

I.     **Plaintiff has not shown that Davey's Eighth Amendment rights were violated**.

To establish a violation of the Eighth Amendment, Plaintiff contends that Branham and Noyes were deliberately indifferent to Davey's medical needs. A deliberate indifference claim has an objective and a subjective component. *See Farmer v. Brennen*, 511 U.S. 825, 834 (1994). Plaintiff has not met the subjective component.

The subjective test is only met when a plaintiff shows an officer "knows of and disregards an excessive risk to a prisoner's health or safety," that is, he acts with "deliberate indifference." *Sealock*, 218 F.3d at 1209. In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Jail officials who knew of a substantial risk are free from liability if they responded reasonably to the risk even though harm was not averted. *Id.* at 844.[24]

   a. **The undisputed facts do not establish a constitutional violation because those facts do not indicate Defendants disregarded any risk to Davey**

Here, Plaintiff does not show that Branham and Noyes failed in fulfilling their gatekeeper role, given the risks they faced entering a cell where two inmates had been fighting. When evaluating medical care and deliberate indifference, security considerations inherent in the

---

[24] Courts distinguish a medical professional's failure to treat a serious medical condition properly, which does not constitute deliberate indifference, from prison officials who prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment, which may constitute deliberate indifference. *Sealock*, 218 F.3d at 1211. In the latter scenario, if the official "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel . . . and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference . . . he also may be liable for deliberate indifference from denying access to medical care." *Id. see also Estelle v. Gamble*, 429 U.S. 97 (1976) (explaining that deliberate indifference may be manifested "by prison guards in intentionally denying or delaying access to medical care").

functioning of a penological institution are given significant weight. *See MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (finding no deliberate indifference where prison officials awaited additional staff and medical personnel before entering a cell where two inmates had been fighting); *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014); *Battista v. Clark*, 645 F.3d, 449, 454 (1st Cir. 2011) ("[S]ecurity considerations also matter at prisons . . . and administrators have to balance conflicting demands.") A prison guard, acting alone "is not required to take the unreasonable risks . . . when the circumstances make it clear that such action would put her in significant jeopardy." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (citing *Guzman v. Sheahan*, 495 F.3d 853, 858 (7th Cir. 2007)).

Here, the undisputed facts show Branham and Noyes responded reasonably to the emergent situation. Upon being notified of Cheney's call, Branham and Noyes arrived at Davey's cell within a minute and Branham activated the Incident Management System ("IMS"), which dispatched a medical team and additional officers from other sections of the prison. Cheney told Branham he and Davey had been arguing, Davey "squared off" with him, they got into a fight, and that he "choked him out." Due to the safety risks and prison protocol, Branham and Noyes were justified in waiting for the backup Branham summoned before entering the cell. Once additional officers and medical staff arrived at the cell (less than nine minutes after being summoned), all officers on scene, including Defendants Branham and Noyes, worked to remove Mr. Cheney and allow medical personnel to help Davey. Nothing in these facts suggests any deliberate indifference. Rather, the record indicates Defendants responded in a way that balanced the perceived risks to their safety with Davey's medical need, a balance recognized in the law. Accordingly, Plaintiff's deliberate indifference claim fails.

> 1. *Plaintiff overlooks the deference given to prison officials in maintaining internal security in a jail*

Further, deference is given to prison officials in the execution of practices, that in their judgment, are needed to preserve discipline and to maintain internal security in a jail. *United States v. Brown*, 654 F. App'x 896, 913 (10th Cir. 2016). This deference "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). There is "no rule of constitutional law [that] requires unarmed officials to endanger their own safety in order to protect a prison inmate." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006); *see also Carrothers v. Kelly*, 312 F. App'x 600, 602 (5th Cir. 2009) (per curiam).

*Arenas v. Calhoun*, 922 F.3d 616 (5th Cir. 2019) illustrates this point. In that case an officer was patrolling a section of the prison and saw an inmate hanging from a noose around his neck with a bedsheet suspended from the ceiling sprinkler head. *Id*. at 618. Because the officer was unable to see the inmate's feet through the small window in the cell door, he could not tell whether the inmate was actually hanging and in need of medical assistance or was staging suicide to draw officers into the cell for an ambush. *Id*. Instead of rushing into a potentially dangerous situation, the officer immediately summoned backup and waited for his supervisor to determine when it was safe to open the door. *Id*. By the time the officers entered the cell nearly seven minutes later, the inmate was dead. *Id*. The Court held that while it took several minutes for help to arrive, entering the dormitory alone would have jeopardized the officer's personal safety and that of the prison itself. *Id*. The officer was well aware that prisoners occasionally stage injuries or other emergencies to lure responding officers into their cell. *Id*.

Instead of rushing into a potentially dangerous situation, Branham called for backup. Two officers entering a small cell housing two inmates in an unknown situation put their lives at risk. In this situation, the only thing Branham and Noyes knew was that one inmate on the other side of a cell door had self-reported that he choked another inmate who was covered in a sheet. Also, blood was present. As was the case in *Calhoun*, Branham and Noyes were armed with knowledge that inmates can, and do, stage emergencies with the express purpose of summoning guards to harm them.[25] Branham and Noyes were not required to take the unreasonable risk of entering the cell and exposing themselves to potential ambush or to bloodborne pathogens without backup and protective gear.

## II.     Plaintiff has not shown Defendant violated any clearly established right.

The second element of the "qualified immunity" analysis requires courts to examine whether the right allegedly violated was a "clearly established" right. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "A case clearly establishes a right 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains.'" *Id.* (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197–98 (10th Cir. 2010)). Also, it is a "longstanding principle that clearly established law should not be defined at a high level of generality." *Redmond v.*

---

[25] Ex. A, Branham Dep., 19:8-15, 27:23–28:16, 43:2–7; Ex. B, Noyes Dep., 29:18-30:3, 32:9–14; Ex. K, Branham Decl. ¶¶ 12–13.

*Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "[A]lthough there need not be a case precisely on point for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Mullenix* at 12). "The 'dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Id.* This requires a determination whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix* at 12 (quotation omitted).[26]

      Plaintiff cites only a single Tenth Circuit case to support his argument that the law is clearly established, *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014). *Booker* is distinguishable in a number of material respects, which becomes readily apparent with a recitation of the facts: When the decedent in *Booker* allegedly became uncooperative with one deputy in the booking area of a jail, three other deputies and a sergeant came to assist. *Id.* at 412–13. The five jailers forced decedent to the ground. *Id.* at 413. One deputy put decedent in a carotid restraint ("chokehold") for over two minutes. *Id.* Two others forcibly handcuffed decedent's hands behind his back while another deputy applied nunchakus to his ankle. *Id.* One handcuffing deputy then put a knee on decedent's back. *Id.* While decedent was thus restrained, the sergeant tased him for eight seconds. *Id.* at 414. Video of the event showed the decedent

---

[26] While it is possible for general legal standards to provide clearly established law, "[g]eneral legal standards . . . rarely clearly establish rights." *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (quotation omitted). "They only do so in an obvious case," meaning "a case in which the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quotations omitted). Plaintiff does not suggest this case was obvious nor does it appear to be so.

motionless on the floor while the deputies subdued him. *Id.* at 415. After decedent was tased, four deputies carried him by each of his limbs to an isolation cell where they placed decedent face down, lingered in the cell for about 90 seconds, and left without checking his vitals. *Id.* The sergeant secured the Taser in its storage location before making a request to the nurse's office to evaluate the decedent. *Id.* The deputy who applied nunchakus returned to the cell about twenty seconds later, saw decedent was not breathing, and alerted another deputy who told nurses to hurry. *Id.* On these–hopefully extreme–facts, the Tenth Circuit concluded, "the contours of the right are clearly established such that any reasonable officer in the Defendants' position (and with their training) would have known that failing to check [the decedent]'s vital signs, perform CPR, or seek medical care for three minutes when he was limp and unconscious as a result of the Defendants' use of force could violate the Constitution." *Id.* at 434.

*Booker* is not particularized to the situation confronting Branham and Noyes and could not put them on notice their actions violated Davey's constitutional rights. First, in *Booker*, it was the deputies that created the injury they then ignored. That is not the case here. Davey's cellmate inflicted the injury and neither Defendant even witnessed the event. Second, and more importantly, there was no apparent safety risk to the officers in *Booker*. The decision does not indicate any other inmates were present and there were four deputies and a sergeant present. The inmate was unresponsive, a fact the deputies knew because they rendered him so. Indeed, the deputies felt comfortable enough to linger in the decedent's cell for 90 seconds. In short, there was no conceivable reason in *Booker* to delay medical care. Here, Branham and Noyes were the only two officers that could respond to a cell with two inmates, one of which was covered in a sheet and the other had self-reported a strangulation. Branham and Noyes articulate legitimate

10

safety risks and security concerns. They could not have known with certainty the situation on the other side of the cell door. They did not have the benefit they now do, and the Court does, of hindsight. This case, and the other out-of-circuit cases cited by Plaintiff, do not show a clearly established right to medical care in the particularized circumstances of this case, nor do they establish that Branham and Noyes were required to put Davey's safety ahead of their own.[27]

### III. The Court declines to exercise supplemental jurisdiction over the remaining claim under the Utah Constitution

The Court declines to exercise jurisdiction over Plaintiff's claim under Article 1 Section 9 of the Utah Constitution, the so-called "unnecessary rigor" claim. Accordingly, the Court dismisses that claim without prejudice. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *see Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) ("district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial"). In addition to the ordinary reasons that counsel in favor of declining supplemental jurisdiction when all federal claims are dismissed, the state of Utah has a strong interest in interpreting its own constitution and defining the contours of claims asserted pursuant to that document.

---

[27] Indeed, an Eighth Circuit case Plaintiff cites, *Tlamka v. Serrell*, offers a sensible formulation of the rule that applies in these situations: "the determination of whether [a] delay is constitutionally actionable depends on the seriousness of an inmate's medical condition and on the reason for the delay." 244 F.3d 628, 635 (8th Cir. 2001). Although Plaintiff prevailed in *Tlamka*, that case is likewise distinguishable from this one because it involved officers who ordered fellow inmates to stop performing cardiopulmonary resuscitation ("CPR") on decedent, who had been responding well to CPR. *Id.* at 630–31. Those same officers, who were trained in CPR, offered no assistance to the decedent and no justification for delay. *Id.* at 631.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Defendants' Motion for Summary Judgment on the 42 U.S.C. § 1983 Eighth Amendment claim and will enter judgment in favor of Defendants on that claim.

The Court declines to exercise supplement jurisdiction over the Article 1 Section 9 claim and therefore dismisses that claim, without prejudice to refiling in state court.

DATED this 20th day of August 2025.

BY THE COURT:

Ann Marie McIff Allen
United States District Judge